**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JACKSON NATIONAL LIFE     )
INSURANCE COMPANY,      )
                            )
          Plaintiff,      )      Civil Action No. 15-1629
                            )
      v.              )      Magistrate Judge Robert C. Mitchell
                            )
LINDA LUNT, LISA DONOVAN,  )
LONNIE BRICE, BRIAN LAURICH,)
ALEXANDER POLKOWSKI, and  )
RICHARD POLKOWSKI,     )
          Defendants.    )

## <u>MEMORANDUM OPINION and ORDER</u>

Mitchell, M.J.

    Plaintiff Jackson National Life Insurance Company ("Jackson National") initiated this action by filing a Complaint in Interpleader. We have asked counsel to brief the issue as to why a stay should not be entered in this case. For the reasons that follow, this case will be stayed.

## I. Jurisdiction

    The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1335(a) because the adverse claimants are of diverse citizenship as defined in 28 U.S.C. 1332, *CNA Insurance Co. v. Waters*, 926 F.2d 247, 249 n. 5 (3d Cir. 1991), and Jackson National has deposited the life insurance proceeds, which are greater than $500, into the Registry of the Court.

## II. Background

### A. Middle District and Westmoreland County

    The action arises out of conflicting multiple claims to the proceeds of three life insurance annuity policies ("the Policies") issued by Jackson National to Flora Yurkanin, late of West

Newton, Westmoreland County, who died testate on January 17, 2015. [ECF No. 1]. Defendants herein are claimants Lonnie Brice, Lisa Donovan, Brian Laurich, Alexander Polkowski, and Richard Polkowski (hereinafter "Beneficiaries"), as well as adverse claimant, represented by separate counsel, Linda Lunt.

On April 13, 2015, Jackson National filed the instant action in the United States District Court for the Middle District of Pennsylvania at Case Number 3:15-cv-00717 (Conaboy, J). Two of the Beneficiaries were alleged to have resided in the Middle District of Pennsylvania. Jackson National alleged in its Complaint [ECF No. 1] as follows: that on or about January 29, 2008, Ms. Yurkanin named Defendant Lunt as the sole beneficiary under the Policies; that on or about December 1, 2011, Ms. Yurkanin named the Beneficiaries as the beneficiaries of the Policies; that on May 23, 2012, the Court of Common Pleas of Westmoreland County, Pennsylvania ruled that Ms. Yurkanin was a totally incapacitated person; that Flora Yurkanin died on January 17, 2015; the Beneficiaries submitted their claim for death benefits under the Policies on January 27, 2015; on February 6, 2015 and March 9, 2015, counsel for Defendant Lunt sent written correspondence to Jackson National in which Defendant Lunt asserted a claim to the death benefits under the Policies; in that correspondence, Defendant Lunt claimed that Ms. Yurkanin was not competent to change the beneficiary designation on the Policies on December 1, 2011, when the beneficiary designation was changed from Defendant Lunt to the Beneficiaries. [ECF No. 25 at 2].

Generally speaking, the Beneficiaries deny certain key allegations, stating that "Lunt did not present a right to make any claim against the annuity policies because, (1) upon information and belief, Lunt made herself beneficiary of the policies using a Power of Attorney and exceeded

her authority as agent to do so; and, (2) the Defendants are the properly named beneficiaries of the annuity policies." [ECF No. 20]. The Beneficiaries also aver:

> In 2008 Lunt provided Jackson with the power of attorney dated December 27, 2007, with Yurkanin as principal naming Lunt as her agent ("the 2007 POA"). Lunt immediately made herself the beneficiary of the annuities through use of the 2007 POA. Notably, the 2007 POA did not contain language that would authorize Lunt to self-deal, make gifts to herself, or otherwise engage in the transaction. By March of 2009, Jackson placed a fraud alert on Flora's account due to Lunt's activity with respect to Flora's annuities.

Defendant Lunt filed her Answer on June 2, 2015 [ECF No. 19] and Beneficiaries filed their Answer on June 15, 2015. [ECF No. 20]. On June 19, 2015, Judge Conaboy ordered that the Beneficiaries and Lunt file briefs within thirty days setting forth all relevant factual and legal issues supporting their competing claims to the proceeds of the three annuities. [ECF No. 21].

On July 10, 2015, the Beneficiaries filed an Action for Declaratory Judgment in the Court of Common Pleas of Westmoreland County [ECF No. 29-1] ("the Estate case") for purposes of determining the proper beneficiaries of the Jackson Life insurance policies. Ms. Lunt filed Preliminary Objections seeking dismissal of that action.

On July 17, 2015 Jackson National filed a Motion for Judgment on the Pleadings and brief in support in the instant action. [ECF Nos. 25, 26]. Defendant Lunt joined Jackson's Motion for Judgment on the Pleadings by means of a Certificate of Concurrence. [ECF No. 25-2].

On July 31, 2015, the Beneficiaries filed a Motion to Stay and Brief in Support. [ECF Nos. 28, 29]. This Motion was opposed by both Jackson National [Doc. 31] and Ms. Lunt [Doc. 35]. The basis of the motion to stay was the absence of any claim before that court and the concurrent pendency of the state court action. The Beneficiaries explained to Judge Conaboy

that there are two state court actions relating to Ms. Yurkanin and the parties' claims in the Court of Common Pleas of Westmoreland County: 1) Guardianship Estate at No. 626 of 2012 ("the Guardianship"); and 2) Decedent's Estate at No. 0133 of 2015 ("the Estate"). Matters relating to Lunt's presumed claims have previously been litigated in the Orphans' Court in the Guardianship. It was noted that despite the request of Beneficiaries for Jackson National to file its interpleader in Westmoreland County, Jackson instead filed this action in federal court.

On August 7, 2015, Jackson National Life filed a Brief in Opposition to the Motion to Stay. [ECF No. 31]. Judge Conaboy granted Jackson National's Motion for Judgment on the Pleadings by Order dated November 23, 2015. [ECF No. 36]. The Court ordered Jackson National to pay the entire accrued sums on its annuity policies into that Court's registry and released Jackson National from further liability. [ECF No. 36]. On December 10, 2015, those sums were so received by the Court. On December 11, 2015, Judge Conaboy summarily denied the Motion to Stay Proceedings in federal court and instead, directed transfer of the case to this Court pursuant to 28 U.S.C. § 1404(a) in the interest of judicial economy and overall convenience for the parties and witnesses. [ECF No. 38 at 6.]

### B.  Present Action and Progress in Westmoreland County

On December 21, 2015, this Court entered an Order that the Clerk of Court for this district deposit to the registry of this court the proceeds of the three annuity policies whose beneficiary designation is at issue. Those sums totaled $141,003.40.

All parties have consented to jurisdiction by the United States Magistrate Judge. [ECF Nos. 46, 47, 49].

On January 8, 2016, Lunt filed an Appeal of Grant of Letters, requesting the Court of

4

Common Pleas of Westmoreland County, Pennsylvania, Orphans' Court Division, to strike or otherwise invalidate the 2011 Will admitted to probate, claiming undue influence due to Yurkanin's asserted unsound mind. On January 8, 2016, Lunt gave notice of her intent to present the Appeal and required scheduling order on her Appeal. [ECF No. 52-1].

On January 14, 2016, this Court conducted a status conference at which all parties were represented by counsel. A detailed discussion of the prior and pending state court matters was had. At the conclusion of the conference the court ordered that the parties brief the issue of why the case should not be stayed pending resolution of the Estate and other related matters in Westmoreland County. On January 29, 2016, Lunt filed a Brief in Opposition to the Motion to Stay, with exhibits attached thereto. [ECF No. 51]. On the same day, a Brief in Support of Request for Stay was submitted by the Beneficiaries with exhibits in support. [ECF No. 52]. Both have filed reply briefs. [ECF Nos. 54, 55].

On January 19, 2016, the Honorable Anthony Marsili of the Court of Common Pleas of Westmoreland County entered a Preliminary Decree causing a Rule to show cause be issued in response to Lunt's Appeal requesting that the Will be declared "invalid." [ECF No. 52 at 3]. In the Decree the Ophan's Court scheduled a hearing on May 16, 2016, ordered the Estate to file a response by February 22, 2016, and scheduled a status conference on April 12, 2016. [ECF No. 52 at 3]. Separately, on January 20, 2016, Judge Marsili heard argument on the Preliminary Objection of Lunt to the Beneficiaries' Action for Declaratory Judgment and Other Relief.

On February 11, 2016, Linda Lunt filed with this Court a Notice of Entry of Opinion and Order by the Court of Common Pleas of Westmoreland County [ECF No. 56] to which she attached as an exhibit an Opinion and Order from the Orphan's Court Division dated February 5, 2016 (in the

Declaratory Judgment Action filed by the Beneficiaries, naming Linda Lunt and Jackson National as Respondents).

In that action plaintiffs allege at Count I a petition for declaratory judgment, at Count II breach of contract action against Jackson National, and at Count III, tortious interference with contractual relationship against Linda Lunt. The Court sustained Ms. Lunt's Preliminary Objections and stayed the Declaratory Judgment Action, pending further order of court. The court held that any decision in the above-encaptioned federal "Interpleader Action will have a direct result on the present Action, and in an effort to prevent the duplication of litigation and the inevitable problem of two courts making rulings affecting the same subject matter, this Court must stay the current Action while the previously filed case is pending the United States District Court for the Western District of Pennsylvania." [ECF No. 56-1 at 6].

The next day, February 12, 2016, the Beneficiaries filed with this Court a Notice of State Court Filing [ECF No. 57], in which they averred they intended to present a Motion to Reconsider the February 5, 2016 Order to the Honorable Anthony G. Marsili on Friday, February 26, 2016. The request for reconsideration shall rely upon: 1) the fact that the February 5, 2016 Order failed to consider the existence of the Will Contest; 2) the Order guarantees that there will be two pending matters (one in federal court and one in Orphan's Court arising from the same exact factual circumstances; 3) the Order failed to consider Lunt's recently filed Will Contest in performing its analysis under *Penox Technologies, Inc. v. Foster Medical Corp.*, 546 A.2d 114 (Pa. Super. 1988); and 4) this Court has asked the parties to state reasons why the Civil action *should not* be stayed and we have not yet issued a decision in that regard.

In their brief in Support of Request to Stay, the Beneficiaries request that we stay this case

until the determination(s) and issuance of a final order from the Court of Common Pleas of Westmoreland County, Pennsylvania, for the very same reasons set forth in their original Motion to Stay [ECF No. 28]. Beneficiaries incorporate the averments set forth in that Motion and accompanying Memorandum of Law [ECF No. 29].

In addition, as explained to this Court during the status conference held on January 14, 2016, the Beneficiaries aver the following for our consideration in deciding whether or not to stay this case. Pursuant to a Petition filed on March 26, 2012, seeking appointment of plenary guardians of Yurkanin's estate and her person, Lunt sought to intervene and requested she be appointed Guardian and asserted various grounds relating to Yurkanin's capacity and asserting Lunt possessed a valid POA. On May 23, 2012, the Court of Common Pleas of Westmoreland County appointed Distinctive Human Services ("DHS") as Yurkanin's Guardian of the Estate at Docket Number 65-12-626 ("the Guardianship"). DHS informed Jackson National of its appointment and it remained in control of Yurkanin's policies through the date of her death. At no time did DHS modify or revoke Yurkanin's beneficiary designation. The Orphans Court issued numerous Orders and Decrees relating to the proper appointment of a guardian. According to the Beneficiaries, each of these circumstances bear on Lunt's current dispute, as she had a full opportunity in the Guardianship to raise questions about capacity, assets, and the effectiveness of the 2007 POA.

Furthermore, the Beneficiaries explain, and the Court has no reason to doubt, Lunt not having contested it, that during the pendency of the Guardianship, DHS initiated legal action against Lunt seeking an accounting and the reimbursement of funds expended by Lunt in her capacity as Agent under the 2007 POA. DHS retained a forensic accounting firm to examine Lunt's actions. The forensic accountant arrived at various findings as to Lunt's action, including Lunt making gifts to

herself using Yurkanin's bank accounts, Lunt making gifts to her relatives (not Yurkanin's) using Yurkanin's bank accounts, transferring funds without full documentation, making checks out to "cash" without any description of its use, and, inter alia, making beneficiary changes to the subject annuities. Lunt ultimately agreed to remit payment of $50,000.00 in compromise of the claims against her, as approved by another Order of Court on January 15, 2015.

The Beneficiaries also explain – and Lunt does not appear to contest – that on June 23, 2015, the Orphans' Court directed the payment of DHS's fees from the Estate. The Last Will and Testament of Flora Yurkanin (the "Will") provides that all inheritance taxes on any property, whether or not such property passes under the Will be paid from Yurkanin's residuary estate. The Beneficiaries therefore argue that the annuities are in fact related to the administration of the Estate, which is soundly within the exclusive jurisdiction of the Orphans' Court.

Lunt opposes the request for a stay, arguing that Judge Conaboy's ruling is law of the case which precludes us from revisiting the motion. Lunt also argues that we should avoid duplicative and piecemeal litigation, noting that this interpleader action was brought prior to the Beneficiaries filing their complaint for declaratory judgment in the Court of Common Pleas for Westmoreland County. Lunt also views this is a convenient forum. In addition, Lunt notes that death benefits under an annuity or policy of life insurance are not assets of a decedent's estate under Pennsylvania law. Moreover, Lunt explains that whether Yurkanin lacked the capacity to change the beneficiary designation when the changes were made in late 2011 may easily be addressed by this Court.

**III.  <u>Discussion</u>**

The law of the case doctrine does not limit a federal court's power; rather, it directs its exercise of discretion. *See Arizona v. California*, 460 U.S. 605, 619, 103 S.Ct. 1382, 1391, 75

L.Ed.2d 318 (1983); *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912). The Supreme Court has elaborated on the scope and nature of this discretion:

> A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'

Christianson, 486 U.S. at 817, 108 S.Ct. at 2178 (citation omitted). This Circuit has recognized several "extraordinary circumstances" that warrant a court's reconsideration of an issue decided earlier in the course of litigation. They include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *See Bridge v. U.S. Parole Commission*, 981 F.2d 97, 103 (3d Cir.1992); *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 169–70 (3d Cir.1982).

We agree with the Beneficiaries that Judge Conaboy's prior handling of the pending motion for stay is not law of the case under the specific circumstances and procedural history of this case. Clearly, Judge Conaboy's December 11, 2015 order directing transfer of the case to this Court was focused on just that, the transfer to a more appropriate venue. Regardless, since the date that this case was transferred to this Court, on January 8, 2016, Lunt filed an Appeal of Grant of Letters, requesting the Court of Common Pleas of Westmoreland County, Orphans' Court to strike or otherwise invalidate the 2011 Will admitted to probate, claiming undue influence due to Yurkanin's asserted unsound mind.

The federal interpleader statute, 28 U.S.C. § 1335 (1993), is a remedial device which enables a person holding property or money to compel two or more persons asserting mutually exclusive rights to the fund to join and litigate their respective claims in one action. 3A J. Moore & J. Lucas,

Moore's Federal Practice § 22.02[1] (2d ed. 1994). The benefits of the device to both the stakeholder and the claimants are substantial. It relieves the stakeholder from determining at his peril the merits of competing claims and shields him from the prospect of multiple liability; it gives the claimant who ultimately prevails ready access to the disputed fund. *Id.*

An action commenced under section 1335 typically involves two steps: during the first, the district court determines whether the requirements of the statute have been met and whether the stakeholder may be relieved from liability; during the second, it actually adjudicates the defendants' adverse claims to the interpleaded fund. *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir.1983); 7 C. Wright, A. Miller & Mary Kay Kane, 7 Federal Practice and Procedure § 1714 (2nd Ed.1986). The second stage, which proceeds like any other action, is ultimately resolved by the entry of a judgment in favor of the claimant who is lawfully entitled to the stake. *See Diamond Shamrock Oil & Gas Corp. v. Commissioner of Revenues,* 422 F.2d 532, 534 (8th Cir.1970).

Here, Judge Conaboy completed the first step of interpleader when he granted Jackson National's motion for Judgment on the Pleadings and discharged it from liability.[1] We must now decide how to proceed at the second stage. We note that there are no cross claims herein.

In the interpleader case of *New York Life Distribs., Inc. v. Adherence Group, Inc.,* 72 F.3d 371, 382 (3d Cir.1995), the Third Circuit applied the broad discretionary standard set forth in *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 (1942), and directed that:

> T]he district court should determine, as a threshold matter, whether the state court action is indeed 'parallel' .... [s]ince the very basis for deference is the avoidance of needless duplicative litigation.... [T]he court should evaluate which forum will protect the [plaintiff] more effectively while providing the [defendants] with the more efficient, convenient, and expeditious vehicle to settle their dispute.... We would also expect the

---

1 Also presently pending is Jackson National's Motion for Attorney's Fees [ECF No 58].  That Motion will be decided separately.

district court to evaluate the conduct of the parties in litigating both the federal and state actions to ensure that procedural fencing, forum shopping or gamesmanship is not rewarded. We do not intend the considerations we have enunciated to be comprehensive, and leave it to the district court to consider any other factors it finds relevant.

A parallel proceeding is one "pending in a state court in which all the matters in controversy between the parties could be fully adjudicated." *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 137 n. 9 (3d Cir. 2014) (citing *Brillhart*, 316 U.S. at 495). The parties in the two actions need not be completely identical for the actions to be parallel, but rather a "substantial identity of parties and claims" must exist. *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir.2006).

The *New York Life* court continued, ""where the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the controversy. Accordingly, the district court should also consider whether a stay of this action, rather than a dismissal, is appropriate, in the event it decides that the parties are to resolve the issues raised in this action in the state court." 72 F.3d at 382-383.

In application of the preceding factors, we first look to whether or not this matter is parallel to the state court action. Here, the parties are the same as those in the declaratory judgment lawsuit pending in Westmoreland County. Yet Jackson National's Complaint and its motion for Judgment on the Pleadings, which was granted, only sought to pay disputed funds into court. It did not assert a declaratory judgment action per se. There are no pending counterclaims. The Beneficiaries chose to file in state court, and arguably, may not have been able to file a separate action here.

In next considering which forum will protect the stakeholder more effectively while

providing the claimants with more efficient, convenient, and expeditious vehicle to settle their dispute to the Policy proceeds we note the following. We are concerned with Lunt's challenge to the annuity designation, that Yurkanin lacked legal capacity at the time Beneficiaries were named to receive the annuity benefits. In essence, Lunt must re-litigate the Guardianship and obtain a ruling changing the date of Yurkanin's incapacity. Two physicians examined Yurkanin before she executed the change of beneficiary forms in favor of the Beneficiaries. Both physicians allegedly concluded that she was mentally impaired due to dementia before that date. Moreover, the annuities are already intertwined with estate administration, and thus within the jurisdiction of the Orphans' Court, because the Will directs that the inheritance taxes on property, whether or not it passes under the Will, be paid by the Estate. The Orphan's court has initiated a scheduling order and can effectively sort out Yurkanin's capacity and how, if at all, Lunt's alleged wrongdoing impacts her claim. It appears that DHS had the ability to alter Yurkanin's beneficiary designations but did not do so. Jackson National was informed of DHS' appointment, and Lunt appears to have been able to request that her status of beneficiary be considered. The Orphans' Court is the best to forum to determine whether Lunt had the authority to self-appoint Lunt as beneficiary, which may be considered a gift under Pennsylvania law. Moreover, if it is determined that neither the Beneficiaries nor Lunt are properly named beneficiaries, the Orphans' Court must decide whether the Estate or some other person is entitled to receive the annuity benefits.

On the whole, this interpleader action raises issues of state law peculiarly within the purview of the Pennsylvania court system which are better decided by that system. We stress the importance of respecting the ability of the Pennsylvania court system to enforce its own judgments decided by its own Courts of Common Pleas. We see no evidence of forum shopping on the part of any party.

IV. **Conclusion**

Accordingly, for the reasons stated herein, the Court enters the following order staying this case.

**ORDER**

AND NOW, this 23rd day of February, 2016, IT IS HEREBY ORDERED THAT this action is STAYED pending resolution of the litigation in the Court of Common Pleas of Westmoreland County at No. 65-15-0133, and that this case be administratively closed. Should further proceedings therein become necessary or desirable, either party may initiate them in the same manner as if the Order had not been entered.

/s/ *Robert C. Mitchell*
ROBERT C. MITCHELL
United States Magistrate Judge

cc: record counsel via CM-ECF